**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN   DIVISION


|                          |   |   |
|--------------------------|---|---|
|                          | * |   |
| CLAYTON O'NEAL SPEARS     | * |   |
|                          | * |   |
| Plaintiff                | * |   |
|                          | * | NO: 4:06CV1313  SWW |
| VS.                      | * |   |
|                          | * |   |
| UNUM LIFE INSURANCE      | * |   |
| COMPANY OF AMERICA       | * |   |
|                          | * |   |
| Defendant                | * |   |
|                          | * |   |
|                          | * |   |

## ORDER

Plaintiff Clayton O'Neal Spears ("Spears") brings this action under the Employee

Retirement Income Security Act  ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), against Unum Life

Insurance Company of America ("UNUM"), seeking review of UNUM's decision to deny him

long term disability benefits.  Before the Court are Spears's motion for summary judgment

(docket entries #9, #10, #11) and Unum's motion for judgment on the record (docket entries #15,

#16, #17).  After carefully considering the parties' filings, and the stipulated, administrative

record (docket entry #5), the Court finds that UNUM's decision should be upheld.

### I. Background

Spears, born March 8, 1967, was employed by Perry L. Butcher & Associates, Architects

LTD ("Butcher") as a project manager.  Spears is a high school graduate, and his job duties at

Butcher included producing and reviewing architectural documents  (AR 15-16.)   Spears

1

participated in Butcher's short-term disability ("STD") and long-term disability ("LTD") plans, which are administered by UNUM and insured by policies issued by UNUM.

On April 5, 2004, Spears filed a claim for STD benefits, stating that he had been unable to work since March 17, 2004 due to severe headaches, dizziness, blurred vision and nausea. (AR 13-17.)  In support of his claim, Spears submitted a physician's statement dated April 7, 2004 by Dr. Traci Ivey, diagnosing Spears with  "maxillary sinusitis, headache, [history] brain mass." (AR 13).  Under the heading restrictions and limitations, Dr. Ivey wrote: "Pt. experiencing dizziness, headaches, and visual disturbance. No heights, sharp instruments."  (AR 13.)  Dr. Ivey provided the following objective findings:   "MRI from 4/2/04 shows an arachnoid cyst in the posterior, cranial fossa and increased signal density within the bilateral frontal/peri-ventricular white matter." *Id*.

By letter dated April 20, 2004, UNUM informed Spears that his claim for STD benefits had been approved through March 30, 2004.  (AR 38.)  UNUM advised Spears that it would not consider extending his benefits beyond March 30, 2004 without additional medical information indicating how his medical condition continued to affect his work capacity.  (AR 38.)

Dr. Ivey referred Spears to Dr. John Lee, an ear, nose, and throat specialist, to investigate whether his dizziness was caused by a sinus infection.   Dr. Lee examined Spears on April 28, 2004, and concluded that his symptoms were not related to sinusitis or an ear, nose or throat problem.  (AR 56).   In a letter to Dr. Ivey, Dr. Lee stated: "The posterior fossa arachnoid cyst may be congenital or incidental in nature, but I have seen occasional reports of these causing headaches or balance problems.   I agree with the [decision to consult a neurologist] . . . ."  (AR 58.)

In a progress note dated April 30, 2004, Dr. Ivey wrote that Spears was scheduled to see a neurologist, Dr. Ryan Kaplan, on June 11, 2004.  (AR 56.)  Dr. Ivey noted:   "He states he just does not feel he can do his job related to his dizziness."  (AR 56.)

In a letter dated May 19, 2004, UNUM notified Spears that based on additional medical information provided by Dr. Ivey, his STD benefits had been extended  through June 11, 2004. The letter states that UNUM would not consider extending his benefits beyond June 11, 2004 unless it received additional medical information indicating how his medical condition continued to affect his work capacity.  (AR 70.)

Clinic notes dated June 21, 2004 by Dr. Ivey state that Dr. Kaplan examined Spears and determined that his headaches were related to his arachnoid cyst.  (AR 99.)  Dr. Ivey wrote that Dr. Kaplan would follow Spears's headaches and dizziness, and Spears continued to have dizzy spells and state that he was unable to work.   (AR 99.)

By letter dated July 27, 2004, UNUM informed Spears that his STD benefits had been extended for the duration of the STD policy period.   (AR 116.)  UNUM informed Spears that his file had been forwarded to a disability benefits specialist to determine whether he  qualified for LTD benefits.  *Id.*

In determining Spears's claim for LTD benefits, UNUM considered Dr. Kaplan's assessment of Spears's condition.  Kaplan's initial consultation report dated June 11, 2004 states that Spears's arachnoid cyst could be the cause of his headaches.  Dr. Kaplan's report concludes as follows:

> We will be requesting the old scan so a comparison can be made.  I would also be inclined to do a spinal tap as well as check some basic labs.  When he follows up with me on Monday, we will try to get these labs done.  One final consideration would be epilepsy.  He did have seizures when a child and epileptic discharges can

lead to bad headaches.  Furthermore, he does have spells of staring and he has woken up with his tongue sore in the morning.  We may potentially need to get an EEG in the future.

(AR 176.)

UNUM also received a report comparing an MRI of Spears's brain taken August 2, 2004 with an MRI taken April 2, 2004.  (AR 261.)  The report states that the appearance of the brain was slightly improved, and the arachnoid cyst was unchanged.   Dr. Kaplan examined Spears on August 13, 2004 and reported  that Spears felt better and his headaches were "not as bad." (AR 281.)  Kaplan noted:  "I will also be sending him to the neurosurgeons to have this cyst evaluated."  (AR 281.)

By letter dated August 24, 2004, UNUM advised Spears that his claim for LTD benefits had been approved for a period of disability from June 15, 2004 through August 14, 2004.  (AR 274.)  UNUM informed Spears that he would not qualify for continued benefits unless he remained disabled as defined in the Butcher's LTD plan.   The letter states: "Based on the medical information received from your treating physician and our experience with your condition, we expect that you will have treatment in the near future to resolve your medical condition and allow you to return to your occupation."  (AR 274.)

Multiple times between November 2004 and February 2005, UNUM attempted to obtain updated information regarding Spears's medical condition and whether his cyst had been removed.  (AR 297-335.)   Spears failed to return UNUM's calls or provide any information about his condition.  *Id*.  On February 22, 2005, UNUM informed Spears that if additional information was not received by March 25, 2005, it would decide his claim based on the information it had.  (AR 333-335.)  UNUM informed Spears that, pursuant to the policy terms,

4

UNUM needed proof that he was under the regular care of a physician and evidence of restrictions and limitations preventing him from performing his regular occupation.  (AR 334.)

On March 30, 2005, UNUM informed Spears that his file had been closed based on his failure to provide requested information.  UNUM advised Spears that if he wished to pursue benefits, he should provide the information previously requested within 30 days.  (AR 346-350.)

By letter dated June 14, 2005, Spears's attorney, Donald B. Kendall, informed UNUM that Spears had been unable to comply with UNUM's request for additional medical information because he lost his health insurance and could not afford to see a doctor.  (AR 355.)   In a letter dated June 30, 2005, Kendall demanded reinstatement of Spears's benefits.  Kendall attached a letter from Dr. Ivey, which reads as follows:

> To Whom it May Concern:
>
> We have been seeing [Spears] since 3/04 for [headaches].  He has had MRI's which show arachnoid cyst . . . . He has seen neurosurgeon to have it removed but Dr. states or recommends no surgery as complications exist. Clayton has been off work since 2/04.  He still experiences dizziness, headaches, visual disturbance and is not able to return to work at this time.  (AR 365.)

On June 12, 2005, Robbin Sarine, a registered nurse employed by UNUM, summarized the medical information in Spears's claim file and forwarded the summary to Dr. Thomas Hashway, UNUM's in-house physician.  (AR 372-373.)  Sarine advised Dr. Hashway that Spears's file had been closed, and she asked him whether Spears's medical information warranted re-opening his claim.  (AR 373.)  On June 12, 2005, Dr. Hashway responded: "There is no recent material in the file that provides evidence that headaches, visual disturbances, or dizziness rise to the level of occupational incapacity."  (AR 373.)  Following Dr. Hashway's review, UNUM informed Spears that the decision to deny him further LTD benefits would stand.

By letter dated July 15, 2005, Kendall requested appellate review of the decision to deny Spears's claim.  (AR 382.)   UNUM requested that Spears provide all outstanding office notes and diagnostic reports from his  medical providers from August 1, 2004 to August 1, 2005.  (AR 139.) In response to UNUM's request, Kendall sent UNUM a medical evaluation by Dr. Larry Armstrong, a neurosurgeon, and a note from Dr. Carrin Candler.  Dr. Armstrong's evaluation,  set forth in a November 3, 2004 letter to Dr. Ivey, states, in part, as follows:

> I had the opportunity and pleasure of evaluating Mr. Clayton Spears today in consultation as requested.  As you are aware, Mr. Spears is a 37-year-old male who presents today having had a multi-year history of headaches. . . . There is no rhyme or reason as to the timing or progression of his headaches, but [he] states that since they initially began they have remained about the same.   He has been placed on some Topamax and has been evaluated by Dr. Kaplan for his headaches, dizziness, nausea, and blurred vision, and well as balance problems, off and on over the last several months. He has had some slight improvement in the quality of his headaches, and the quantity has diminished slightly.
> . . . .
>
> On physical exam this is an awake, alert male who sits in the examination table comfortably and in no acute distress.  Speech is fluent, mentation is brisk, thoughts are appropriate, affect is bright, and he is pleasant and cooperative throughout the entire examination. . . .
>
> Impression:
>
> 1.  Persistent cephalgia
> 2.  Incidental arachnoid cyst, neurologically intact
>
> Recommendation:
>
> No neurosurgical intervention as I have experienced in the past surgery for arachnoid cysts is classically presented with such morbid complications as hemorrhage, as well as intractable seizures and persistent cephalgia.  Due to all the risks I have found over the years that operating on arachnoid cysts presents with many multiple co-morbid death factors.  For this reason I am recommending that he not have any type of surgical intervention for this.  The arachnoid cyst has been stable since the time of his birth and will remain consistent throughout life.  At this point I told him to continue with his Topamax and buproprion.  He has requested an appointment with an additional neurologist as a second opinion, and I have recommended Dr. Candler, and

he will see her for an additional opinion.

(AR 399-400.)

In addition to Dr. Armstrong's letter, Kendall sent UNUM a form titled "certificate to return to work or school" signed by Dr. Carrie Candler.  (AR 401.)  The form, dated August 10, 2005,  indicates that Dr. Candler first saw Spears on August 1, 2005.  In a space reserved for remarks, the form reads,  "Needs more time off work for control of migraine pain."  (AR 401.)

Kendall also sent UNUM Dr. Candler's clinic notes for Spears dated August 1, 2005.  Dr. Candler's notes state that Spears was hospitalized at eighteen months for seizures from spinal meningitis, and, although he had no subsequent seizures, he experienced life-long migraines, which "started hurting worse especially since January."  (AR 414.)   Dr. Candler stated her impression as follows: "38-year old right handed white male with post menigitis/post traumatic migraine."  (AR 145.)  Dr. Candler recommended that Spears continue Topomax and Toprol, use Midrin for rescue medicine, keep a sleep diary, and return to her clinic in six weeks.  (AR 416.)

Finally, Kendall sent UNUM a chart note by Dr. Ivey documenting her examination of Spears on June 28, 2005.  Dr. Ivey's notes state that Spears has a persistent headache and "has been unable to work."  (AR 437.)

Latisha L. Toney, a registered nurse employed by UNUM, reviewed all medical information provided by Spears and concluded that it failed to support ongoing functional loss as of February 14, 2005.  Toney's report states:

> The record reflects reports of life long headache complaints and the arachnoid cyst is reported to have been present back to 1986.  The issues appear to be long term for [claimant].  There is also noted to be a significant lapse in treatment from November 2004 to June 2005.  The current information does not reflect a condition expected to cause the degree of impairment being claimed.

(AR 460.)

Toney referred Spears's file to Dr Michael Edmond, a neurologist with a private practice in Austin, Texas, for an independent review.  Dr. Edmond's report, dated November 2, 2005, states that Spears's medical records contained no documentation of his functional capabilities or limitations.  Dr. Edmond wrote: "The medical records do not document a physical incapacity or disability all limitations appear to be due to the subjective complaints of headaches, dizziness, and blurred vision."  (AR 478.)

Dr. Edmond concluded that Spears's file contained no clinical documentation to support a finding of functional loss, and he gave the following reasons for his conclusion:

> The records indicate the patient has had headaches dating to his youth.  It is unclear from these records as to why the patient's headaches worsened and precluded working.  The inability to work is based on the patient's claim without actual medical documentation as to why.  Despite the patient's having engaged two of his physicians to fill out disability forms, the physicians do not document any physical or mental disability nor provide any specific restrictions or limitations rather only validate the patient's subjective complaints and suggest he cannot work because of these.

(AR 478.)

Dr. Edmond noted that the usual restrictions and limitations for chronic headaches would be "individual medical excused absences for 'severe headaches' with associated symptoms such as nausea, vomiting, phobophobia, hyperacusis and inability to perform one's usual duties."  (AR 478-479.)  Dr. Edmond ended his report with the following comment:  "Ideally, the claimant needs ongoing medical care with the specialist in chronic pain management.  I would also suggest he see a physician for disability documentation as his prior treating physicians have not adequately documented any true disability."  (AR 479.)

By letter dated November 14, 2005, UNUM informed Spears that its decision to deny his

claim for LTD benefits would stand.  UNUM stated, in sum, that Spears's claim was properly

denied because his symptoms and purported inability to work were self-reported and he failed to

provide objective, clinical findings showing restrictions and limitations that precluded him from

performing his regular occupation.  (AR 484-490.)

On March 2, 2006, Spears provided UNUM a vocational evaluation report by Dale

Thomas, a vocational consultant. (AR 496-500.)  Thomas's report begins with the following

statement: "Mr. Spears['] primary and presenting medical condition is a large arachnoid cyst that

causes constant uncontrolled headaches."  (AR 496.)  Thomas's report states that on February 10,

2006, Dr. Ivey filled out a form provided to her by attorney Kendall, on which she "checked" that

Spears was markedly limited  in his ability to carry out instructions, maintain attention for

extended periods, meet deadlines, or maintain ordinary attendance to complete a normal work day

or week.  (AR 497.)  Thomas states his conclusion as follows:

> Based on the claimant's statements, statements from his parents, a statement from his
> church Elder and the medical record I believe that Mr. Spears is not capable of
> sustaining substantial gainful activity.  He is unable to complete a full workday or
> work week without interruption from his headaches.   He cannot maintain
> concentration and attention for extended periods of time.  He cannot maintain a
> predictable pace.   These factors prevent him from being employable.  (AR 500.)

In a March 11, 2006 letter to Kendall, UNUM upheld its appellate decision and stated that

Thomas's report "is void of any clinical findings substantiating functional loss and no additional

medical information has been submitted in reference to the purported medical statements

identified in is assessment."  (AR 502.)

On March 14, 2006, Kendall faxed UNUM a notice of award by the Social Security

Administration, granting Spears disability benefits.[1]  (AR 507-511.)  And on March 16, 2006,

Kendall provided UNUM a single page of the form mentioned in Thomas's vocational report on

which Dr. Ivey  "checked" that Spears was markedly limited in certain areas. (AR 520.)   UNUM

informed Kendall it would consider the additional information he provided, and UNUM requested

that Kendall submit Spears's records on file with the Social Security Administration.  (AR 514.)

Kendall provided the requested records, and UNUM referred Spears's updated file to Dr.

Edmond for a second, independent review.  (AR 651.)  Dr. Edmond opined that Thomas's

statement that Spears's arachnoid cyst caused him to suffer uncontrolled and severe headaches

was erroneous.   He stated  that Spears's records did not support a conclusion that his headaches

were caused by the cyst, and he noted that Dr. Armstrong's neurosurgical opinion was that the

cyst was incidental and without symptoms.    Dr. Edmond again concluded that Spears's records

failed to  document a physical incapacity or limitation, and that Spears's purported limitations

were based solely on his subjective complaints.  (AR 658-659.)

In a letter to Kendall, dated May 26, 2006, UNUM informed Spears that his request for re-

appellate review was denied.  UNUM stated: "Based upon the additional documentation . . . it

appears . . . that your client has no support for a disabling condition which is producing or

necessitating restrictions and limitations that would preclude him from performing his regular

occupation."  (AR 898.)

---

[1]A determination that a claimant suffers a disability under social security regulations does not require a plan administrator to reach the same conclusion.  *See Coker v. Metropolitan Life. Ins. Co.* 281 F.3d 793, 798 (8th Cir. 2002).

## II.  Standard of Review

ERISA provides that an employee may bring a civil action to recover benefits due to him under the terms of an employee welfare benefit plan.  *See* 29 U.S.C. § 1132(a)(1)(B).  Although Congress has not specified the scope of judicial review for claims brought under § 1132, in *Firestone Tire and Rubber Co. v. Bruch*, 109 S. Ct. 948 (1989), the Supreme Court held that a denial of benefits challenged under ERISA is subject to *de novo* review unless the terms of the benefit plan give the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  *See Firestone Tire and Rubber Co. v. Bruch*, 109 S. Ct. 948, 956 (1989).    When a plan confers such discretionary authority, the administrator or fiduciary's decision is given deference and reviewed under an abuse of discretion standard, unless factors exist that mandate application of a less deferential standard.  *See Woo v. Deluxe Corp*., 144 F.3d 1157, 1060-61 (8th Cir. 1998).

In this case, Butcher's LTD plan gives UNUM, the plan administrator, "the  broadest discretion permissible under ERISA and any applicable laws."  (AR 218.)    The Court finds that the foregoing language triggers review under the abuse of discretion standard.  The Court also finds that no procedural irregularities or special circumstances warrant a departure from that deferential standard.  Accordingly, the Court must determine whether UNUM's decision to discontinue Spears's LTD benefits was reasonable-- that is, supported by substantial evidence.  "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Fletcher-Merrit v. NorAm Energy Corp.,* 250 F.3d 1174, 1179 (8th Cir.2001)(internal quotations omitted).

## III.  Discussion

11

Butcher's LTD plan provides income benefits while participants are disabled, and the plan policy defines "disabled" as follows:

You are disabled when UNUM determines that:

-you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

-you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

(AR 198.)

The policy provides that a claimant's "proof of claim" must include evidence that he or she is under the regular care of a physician and evidence regarding the extent of disability, including restrictions and limitations that prevent the claimant from performing his or her regular occupation.  (AR 189.)  The policy provides: "We may request that you send proof of continuing disability indicating that you are under the regular care of a physician.  This proof, provided at your expense, must be received within 45 days of a request by us."  (AR 189.)

Although UNUM initially granted Spears LTD benefits, it discontinued benefits based on a lack of objective evidence that  restrictions and limitations precluded Spears from performing the material and substantial duties of his regular occupation.  When UNUM granted Spears's long-term benefits, it apparently believed  that  doctors had determined that his arachnoid cyst was the cause of his headaches, and his symptoms would cease once the cyst was removed.[2]

---

[2]As previously stated, UNUM's letter initially granting benefits stated that based on the medical information provided, UNUM expected that after treatment, Spears's medical condition would be resolved and he would  return to work.  (AR 274.)  Additionally, on August 24, 2004, Spears's wife called UNUM and reported that Spears was scheduled to see a neurologist the following day.  (AR 276.)  A memo documenting the call states that Spears's wife was advised that UNUM was approving LTD benefits with the expectation that Spears would be returning to work "after cyst removal and recovery."  (AR 276.)

However, UNUM subsequently received additional information, particularly Dr. Armstrong's letter to Dr. Ivey, indicating that the arachnoid cyst was stable and had nothing to do with Spears's symptoms, and "there was no rhyme or reason" as to the timing or progression of Spears's headaches.  Furthermore, Dr. Armstrong's physical examination of Spears indicated that he was alert and had "brisk mentation."   Given Dr. Armstrong's letter  and the lack of any objective clinical findings supporting Spears's report that he was unable to work, it was not unreasonable for UNUM to terminate Spears's benefits and uphold that decision on appeal.  *See McGee v. Reliance Standard Life Ins. Co*., 360 F.3d 921, 925 (8th Cir. 2004)( "It is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence.").

Spears argues that the Eighth Circuit's decision in *Walke v. Group Long Term Disability Ins*., 256 F.3d 835  (8th Cir. 2001), requires reversal of UNUM's deicsion.   In *Walke*, the plan administrator terminated benefits it initially granted.  The Eighth Circuit reviewed the termination under a *de novo* standard of review because, unlike Butcher's LTD plan,  the terms of the ERISA plan did not grant discretion to the plan administrator.   In *Walke*, the Court found "nothing" in the claims record to justify that a change of circumstances warranted termination of benefits.

In this case the abuse of discretion standard applies, and unlike the situation in *Walke*, UNUM received additional information after it granted Spears's claim.  Specifically, UNUM received Dr. Armstrong's letter  indicating that Spears has a life-long history of headaches that have no connection to the arachnoid cyst.  Additionally, UNUM obtained an independent opinion from Dr. Edmond, who stated that Spears's claim file contained no objective evidence indicating

that his condition precluded him from performing the material and substantial duties of his regular occupation.  The  Court finds that UNUM provided a reasonable explanation for its decision, supported by substantial evidence, and no ground exists to overturn UNUM's decision.

IT IS THEREFORE ORDERED that Plaintiff's motion for summary judgment (docket entry #9) is DENIED, and Defendant's motion for judgment on the record (docket entry #15) is GRANTED.  Judgment will be entered accordingly.

IT IS SO ORDERED THIS 14TH DAY OF MAY, 2007.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

14